

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable F. M. Law, President
Board of Directors of
Agricultural & Mechanical College
First National Bank
Houston, Texas

Dear Sir:                                    Opinion No. 0578

Re: Is the Board of Directors
of the Agricultural and Mechan-
ical College of Texas author-
ized by law to create the
position of President Emeritus
and pay a salary to the person
designated by it as such if
the health of the holder of
such position is such that
it is inadvisable medically
for him to perform any
service for the College?

    Your letter of December 23rd requests that we
advise the Board of Directors of Agricultural & Mechani-
cal College relative to the following matters:

    "On August 7, 1943, T. O. Walton tendered
to the Board of Directors of the Agricultural
and Mechanical College of Texas his written
resignation as President of the College, giving
ill health as his reason therefor, and such
resignation was accepted by the Board.

    "Inasmuch as he had served the College
for over thirty years, eighteen years of
which constituted his term in the Presidency,
the Board of Directors thereafter created
the position of President Emeritus of the
College and elected him to that position.
The Board also thereafter ordered that he
be paid $12,000.00 for one year and half
of said amount the second year.

ATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE .......

"In light of the above it will be appreciated if you will advise the Board promptly on the following questions:

"(1) Is the Board of Directors authorized by law to create the position of President Emeritus and pay a salary to the person designated by it as such if the health of the holder of such position is such that it is inadvisable medically for him to perform any service for the College?

"(2) Further, in the event that he should regain his health to such an extent that from a medical standpoint he could render some service to the College, would it be legal for him to be paid a salary as President Emeritus although he did not perform any service for the College?

"(3) In the event you should be of the opinion that the Board of Directors is authorized by law to pay such a salary in either or both of such contingencies named above, then please advise whether or not there are any limitations as to the amount of such salary as may be lawfully paid.

The Legislature has vested the control and management of the Agricultural and Mechanical College in the Board of Directors thereof, and by Article 2613, R.C.S. 1925 has provided:

"The Board of Directors is charged with the duties and empowered to do and perform the acts hereinafter set forth as follows:

"1. The board shall, when necessary, appoint the president and professors of the college and such other officers as, from time to time, they may think proper to keep the college in successful operation, and may from time to time abolish any office that is in their judgment unnecessary."

Under the quoted statutory provisions, the Board of Directors of the Agricultural and Mechanical College is empowered to establish the position of President Emeritus, and to define the functions and duties thereof.

The power of public officers to contract for the State must be founded upon and be in all its aspects conferred by law, either expressly or by necessary implication. Ft. Worth Cavalry Club v. Sheppard, 125 Tex. 339, 83 S. W. (2) 660; State v. Ragland Clinic Hospital, 138 Tex. 393, 159 S. W. (2) 105. The extent of these powers must be determined from the several laws granting them, and prescribing the limitations upon their exercise.

Under Section 49 of Article 3 of our Constitution it is provided that:

"No debt shall be created by or on behalf of the State, except to supply casual deficiencies of revenue, repel invasion, suppress insurrection, defend the State in war, or pay existing debt; and the debt created to supply deficiencies in the revenue, shall never exceed in the aggregate at any one time two hundred thousand dollars."

It is settled by the decisions of our Courts that an obligation incurred for services rendered or for goods furnished constituted a "debt" within the Constitutional prohibition where, at the time the obligation is created there is no legislative appropriation effective to authorize its payment from current funds. State v. Wilson, 71 Tex. 291, 9 S. W. 155; Ft. Worth Cavalry Club v. Sheppard, supra; Nichols v. State 11 Tex. Civ. App. 327, 32 S. W. 452 (Error refused); State v. Haldeman, 163 S. W. 1020 (Tex. Civ. App. Error Refused).

In order that no prohibited indebtedness be created against the State through contracts of employment made by the Board of Directors in filling positions established under Article 2613, therefore, it is necessary that authority for the proposed expenditure be found in current appropriations.

The current appropriation bill act for the support of A. & M. College (S. B. 333, Ch. 399, Acts 48th Legislature) makes no provision by specific item of appropriation for the position of President Emeritus. Section 1 of the Act however, authorizes expenditure of funds derived from various local sources "for the support, maintenance, operation and improvement" of the institution, but by paragraph 4 of the General Provisions of the Act, the authority for expenditure of such funds for positions other than those itemized is defined and limited as follows:

"When any additional employees other than those employed to fill the positions itemized herein are employed, and are to be paid out of said appropriations or any other funds, such employees shall not be paid larger amounts than those provided herein for similar positions in such institutions or agencies and in the event there are no similar positions within such institutions then such additional employees shall not be paid larger amounts than those provided for similar positions in other State institutions, departments or agencies."

In view of the limitations considered above, therefore, the compensation payable to a person holding the position of President Emeritus would be dependent upon the duties which are discharged by the person holding such position. Otherwise stated it is not the name or title attached to positions established by the Board of Directors which controls the compensation which may attach thereto. It is rather the duties embraced by the position as compared with itemized positions entailing similar functions which governs salary; that is, whether the position established is in fact comparable to that of Professor of Botany, to that of Professor of Physics or to that of Assistant Auditor. (Our Opinion No. O-5440)

We think it obvious that it was not within the contemplation of Article 2613 that there should be more than one position of President of the Institution,

8.31

and that it was without the contemplation of the Appropriation Act Ch. 399 that there should be another position so similar in the scope of its duties to those of the President's Office as to authorize payment of the same salary as the maximum salary authorized to be paid to the President of the School. Further, it was pointed out in our Opinion O-1433 that while the Board of Directors has authority to establish the position of Vice-President under Article 2613, the provision of the appropriation Act permitting supplementation of the salary of the Vice-President to an amount equal to 80% of the salary authorized for the President, the authority to pay such sum was limited to one position.

There is no position other than that of President of the Institution within those itemized within the appropriation for A. & M. College carrying or authorizing a salary of $12,000 per annum. The Board of Directors therefore exceeded its powers in attempting to attach so great a salary to the position of President Emeritus, whatever the nature of the duties which it was contemplated that position would cover.

Your questions do not define the duties incident to the position with which they are concerned, but, as phrased inquire, first whether the Board of Directors may legally pay a salary to a person as President Emeritus if the health of the employee is such as to render it "medically inadvisable" for him to perform any service for the school, and secondly, whether, if such a person should regain his health, whether it would be legal to pay him a salary although he did not perform any service for the college. Whether or not it is inadvisable as a medical matter for the person to perform duties for the State has no bearing upon the legality of paying him for services actually performed; if he in fact discharges the duties of his employment and he has legally been engaged, he may be paid regardless of the state of health.

The Board of Directors does not have the power, however, to establish remunerative positions which contemplate the performance of no services for the college; that, we think, is an obvious corollary of the limitation that the Board may not attach to positions it establishes, more compensation than is provided for itemized positions of similar duties. Nor can such action be sustained as a

Honorable F. M. Law    Page 6

provision for retirement of personnel; the method pre-
scribedby the Teacher Retirement Act (Ch. 470, Acts
45th Legis, as amended; Art 2922-1, V.A.C.S.) is ex-
clusive, and by necessary inference denies the power
to the Board of Directors to establish another or ad-
ditional system or method.

We regret that we are unable to give
categorical answers to the questions submitted, but their
form prevents a reply in that form. If the above
observations do not cover the problems which you have
in mind, we shall be pleased to advise you further in
reference thereto upon request.

Very truly yours

ATTORNEY GENERAL OF TEXAS

Gaynor Kendall
Gaynor Kendall
Assistant

OK:nod

OK
JP.